617 S.E.2d 778

**Cara Hanna KOERNER Appellant and Plaintiff Below,**

v.

**WEST VIRGINIA DEPARTMENT OF MILITARY AFFAIRS AND PUBLIC SAFETY, and Otis G. Cox, Jr., in his official capacity, Appellees and Defendants Below.**

No. 31683.

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 11, 2005.

Filed: July 5, 2005.

David L. Grubb, Charleston, Counsel for Appellant.

Paul R. Sheridan, Deputy Attorney General, Civil Rights Division, Charleston, Counsel for Amicus Curiae West Virginia Human Rights Commission.

Gary E. Pullin, Tracey L. Wiley, Pullin, Fowler & Flanagan, PLLC, Charleston, Counsel for Appellees.

Walt Auvil, Employment Law Center, Parkersburg, Andrew J. Katz, Charleston, Counsel for Amicus Curiae West Virginia Employment Lawyers Association.

Justice BENJAMIN Delivered the Opinion of the Court.

BENJAMIN, Justice.

This action is before the Court upon the appeal of the Appellant, Cara Hanna Koerner, from the March 10, 2003 order of the Circuit Court of Kanawha County, West Virginia, which denied her motion to alter or amend the judgment in favor of Appellees of the court entered on January 2, 2003. The civil action which gave rise to the January 2, 2003 judgment alleged claims for the wrongful termination of Appellant under the Family Medical Leave Act, The West Virginia Human Rights Act, W. Va.Code 5–11–1 *et seq.* ("WVHRA"), and the common law.

The January 2, 2003 judgment was entered upon a jury verdict that the Appellees, West Virginia Department of Military Affairs and Public Safety, and Otis G. Cox, Jr., in his official capacity as Secretary of the Department, had not breached the terms of an earlier Settlement Agreement entered into by the parties in a prior Grievance Board proceeding. Under the terms of the Settlement Agreement, Appellant Koerner agreed to the resolution of all claims arising out of her employment with the Department and her discharge from that employment.

Appellant Koerner now contends that, despite its apparent terms, the Settlement Agreement did not release or waive her right to pursue a separate civil claim under the West Virginia Human Rights Act in the circuit court because the settlement or waiver did not expressly reference or release rights or claims arising specifically under the West Virginia Human Rights Act as required by a legislative rule of the West Virginia Human Rights Commission ("Commission"), W. Va. C.S.R. § 77–6–3.2.2. (1992).

Appellees, on the other hand, contend that the specific reference requirement of the Commission's legislative rule applies only to claims brought *before* the Commission itself and not to claims *under* the West Virginia Human Rights Act brought in other forums, as the circuit court ruled in its March 10, 2003, order.

This Court has before it the petition for appeal, the briefs of the parties, the briefs of the Commission and the West Virginia Employment Lawyers Association as Amici Curiae, and oral argument of counsel. For the reasons stated below, we conclude that the circuit court did not err in denying the Appellant's motion and in enforcing the Settlement Agreement. Specifically, this Court is of the opinion that the cited 1992 rule of the Commission applies only to claims *before* the Commission and not to claims pursued *under* the West Virginia Human Rights Act in other forums. Accordingly, the March 10, 2003 order of the Circuit Court of Kanawha County is hereby affirmed.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Appellant Koerner filed a grievance before the West Virginia Education and State Employees' Grievance Board asserting that her discharge on July 14, 1998, by the Appellee West Virginia Department of Military and Public Safety violated state law and regulations and federal law. During the course of the grievance proceeding held on September 11, 1998, Appellant Koerner, the Appellees, and their respective counsel, reached an agreement to settle *all* claims arising out of her employment and her discharge therefrom. The terms of the Settlement Agreement were placed upon the record of the grievance proceeding before the Administrative Law Judge by Appellant's counsel, who was described in the circuit court's order of March 10, 2003, as "an attorney experienced in discrimination, employment law and the West Virginia Human Rights Act."

The terms of the Settlement Agreement were reduced to writing in a document prepared by Appellant's counsel, which was signed by him and Appellees' counsel and which was endorsed by the presiding administrative law judge, who subsequently dismissed the grievance from the docket of the Grievance Board. The Settlement Agreement is dated September 28, 1998. Although the parties agreed to settle *all* claims arising out of Appellant Koerner's employment, the Settlement Agreement did not specifically reference the West Virginia Human Rights Act.

Pursuant to the terms of the Settlement Agreement, Appellant Koerner was reinstated to her position within the Department on an approved Medical Leave of Absence Without Pay. She also accepted a cash payment of $5,000 as well as other benefits under the Settlement Agreement. By the agreement's terms, Appellant Koerner "agree[d] to execute, simultaneously with this Agreement, a release of all claims she may have arising out of her employment with the office of Secretary of DMAPS [Department of Military Affairs and Public Safety] from 1 July 1997 through the date of this Agreement [Septem-

ber 28, 1998]." Although Appellant Koerner conceded that she had voluntarily agreed to execute a Release of All Claims, as provided for in the Settlement Agreement, she, with the advice and consent of her counsel, refused to sign the Release document because she and her attorney "did not trust Secretary Cox [an Appellee]."

On July 11, 2000, Appellant Koerner, through her counsel, filed a civil action in the Circuit Court of Kanawha County alleging that the Appellees had breached the Settlement Agreement by failing to provide her a "comparable" job and asserting claims for wrongful discharge under the Family Medical Leave Act and the West Virginia Human Rights Act, as well as common law wrongful discharge claims. After answering the complaint, the Appellees filed a motion for summary judgment claiming that they had complied with the terms of the Settlement Agreement, that the agreement was valid, and that it resolved all claims of the Appellant against them. In response, the Appellant asserted that Appellees had breached the Settlement Agreement thus rendering it null and void and that since the agreement did not expressly release specific claims under the West Virginia Human Rights Act, her claims thereunder remained valid.

The circuit court ordered that the issues be bifurcated and that a jury would first determine whether the Settlement Agreement had been breached. The circuit court ruled that if the jury should find that the Appellees had not breached the agreement then all of Appellant's remaining claims would fail and would not have to be tried in a second trial. The jury returned a verdict finding that Appellees had not breached the Settlement Agreement and the circuit court subsequently entered the aforementioned judgment order of January 2, 2003. The Appellant thereafter filed a motion to alter or amend the court's January 2003 judgment order and determine that even if the Appellees had not breached the Settlement Agreement, Appellant's claims were not waived under the West Virginia Human Rights Act. Appellant sought a trial date for resolving such claims. The circuit court denied Appellant's motion by its March 10, 2003 order.

In the March 10, 2003 order, the circuit court concluded that Appellant Koerner's "agreement to release 'all' claims arising out of her employment was a knowing and voluntary waiver of any claims under the West Virginia Human Rights Act; that the failure of the Settlement Agreement to make express reference to specific rights or claims under the West Virginia Human Rights Act did not invalidate the Appellant's waiver of her right to bring an action in the circuit court; that since Appellant did not tender back the $5,000 and other benefits received under the terms of the Settlement Agreement, she could not assert additional claims for damages arising out of her discharge from employment; and that she was estopped by virtue of her Settlement Agreement and acceptance of the benefits provided therein from proceeding in the circuit court with a claim that her discharge violated the West Virginia Human Rights Act."

Appellant Koerner assigns three errors committed by the circuit court in entering the Judgment Order of January 2, 2003, and in denying on March 10, 2003, her motion to alter or amend, namely: in "[1] refusing to apply an 'objective' standard [that of W. Va. C.S.R. § 77–6–3.2.2.] in the context of Appellant's alleged waiver of her legal claims pursuant to the West Virginia Human Rights Act; [2][h]olding that the waiver regulations promulgated by the Human Rights Commission do not apply to cases filed in circuit court; and [3][a]pplying the controversial and restrictive 'tender back' doctrine in the context of Appellant's legal claims pursuant to the WVHRA."

## II.

### STANDARD OF REVIEW

■ We begin our analysis of this case by setting forth our standard of review. In this case, the Appellant filed a motion, pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure, seeking to alter or amend the entry of a judgment from a jury verdict. In Syllabus point 1 of *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998), we held that, "[t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the un-

derlying judgment upon which the motion is based and from which the appeal to· this Court is filed."

In this case, the basis of the underlying judgment was that of a jury verdict. However, the Appellant's Rule 59(e) motion did not attack the validity of the jury verdict. The Appellant's motion challenged the scope of the claims encompassed by the judgment rendered from the jury's verdict. That is, the Appellant sought to have the trial court enter an order stating that the jury's verdict was only a partial judgment, not a final judgment, and that a second trial would be held on the Appellant's Human Rights claims. In resolving this motion the trial court determined, after construing the relevant regulation, that Appellant voluntarily waived any Human Rights claims she may have had. Thus, our review involves the circuit court's interpretation of a regulation. In that regard we have held that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute [or regulation], we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). With this standard in mind, we turn to the issues presented in this case.

## III

## DISCUSSION

### A. Waiver

As of the date of the Settlement Agreement, September 28, 1998, the Commission had legislative "Rules Regarding Waiver of Rights Under the [Human Rights] Act" that had been in effect since April 29, 1992. W. Va.C.S.R., §§ 77–6–1 *et seq.* W. Va.C.S.R. § 77–6–1 provided:

1.1. Scope—The following legislative regulations of the West Virginia Human Rights Act (WHRA), *W. Va.Code* § 5–11–1 *et seq.*, set forth criteria for regulating the voluntary release or waiver of an individual's right to pursue a claim *before the West Virginia Human Rights Commission.*

(Emphasis added)

Following the Scope provision set forth in W. Va.C.S.R. § 77–6–1.1, § W. Va.C.S.R. § 77–6–3.1., 3.2., and 3.2.2. provided:

3.1. An individual may not waive any right or claim under the West Virginia Human Rights Act unless the waiver is knowing and voluntary.

3.2. A waiver shall not be considered knowing and voluntary unless all of the following conditions are met:

\* \* \* \* \* \*

3.2.2. The waiver specifically refers to rights or claims arising under the West Virginia Human Rights Act;

\* \* · \* \* \* \*

The Scope provision set forth in W. Va. C.S.R. § 77–6–1.1 was later changed. Effective August 12, 2002, *after* the Settlement and Agreement herein was entered into, W. Va.C.S.R. § 77–6–1. was revised to read:

1.1. Scope.—The following legislative rules set forth criteria for regulating the voluntary release or waiver of an individual's right to pursue a claim *under the West Virginia Human Rights Act (HRA)*, W. Va.Code § 5–11–1 et seq.

(Emphasis added) The Commission's legislative rules of April 29, 1992 and of August 12, 2002 regarding waiver of rights, W. Va. C.S.R., §§ 77–6–1 *et seq.*, have the force and effect of law. *See,* Syl. Pt. 5, *Smith v. West Virginia Human Rights Com'n.*, 216 W.Va. 2, 602 S.E.2d 445 (2004) (holding that a regulation proposed by an agency and approved by the Legislature is a "legislative rule" and has the force and effect of law).

The Commission and Appellant Koerner contend that the purpose of the 2002 revisions to the 1992 version of W. Va.C.S.R. § 77–6–1.1. was "to clarify that the [waiver] rules apply to all Human Rights Act claims, regardless of where or whether those claims are adjudicated" and "to clarify what was always the case— i.e., that the rules apply to all Human Rights claims, regardless of where or whether those claims are adjudicated." We disagree. It is implausible to contend that the changed words contained within the 2002 revisions should be given anything other than their plain meaning regarding the "Scope" of the Waiver rules. Specifically, the term "under the WVHRA" applicable to enactment of the claims after 2002 amendments is manifestly different

from the "before the West Virginia Human Rights Commission" standard applicable to claims before that date such as the instant claim. "[U]nder the WVHRA" and "before the West Virginia Human Rights Commission" have entirely different meanings. The 2002 phrase sought to dramatically enlarge the "Scope" of the 1992 Waiver rules. " 'Where the language of a statute is clear [or administrative rule] and without ambiguity [as is the phrase "before the West Virginia Human Rights Commission" in the 1992 legislative rule] the plain meaning is to be accepted without resorting to the rules of interpretation.' " *State ex rel. McKenzie v. Smith*, 212 W.Va. 288, 569 S.E.2d 809, 822 (2002) (Davis, C.J., and Maynard, J., dissenting) (*quoting*, Syl. Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968)).

W. Va.C.S.R. § 77–6–3.1. of the 1992 Waiver rules of the Commission does not create an ambiguity in the "Scope" of those rules. For West Virginia Human Rights Act claims brought "before the West Virginia Human Rights Commission", that section requires that "[a]n individual may not waive any right or claim under the West Virginia Human Rights Act unless the waiver is knowing and voluntary." One of the conditions for making a waiver "knowing and voluntary" was that "[t]he waiver specifically refers to rights on claims arising under the West Virginia Human Rights Act." (W. Va. C.S.R. § 77–6–3.2.2.) W. Va.C.S.R. §§ 77–6–1.1. and 77–6–3.1. of the 1992 Waiver rules are entirely reconcilable and must be read together. Thus: "[a]n individual may not waive any right or claim under the West Virginia Human Rights Act [pursued 'before the West Virginia Human Rights Commission'] unless the waiver is knowing and voluntary." (W.Va.C.S.R. §§ 77–6–1.1., 77–6–3.1.) Had the Commission's 1992 Waiver rules not included the "Scope" provisions of W. Va.C.S.R. § 77–6–1.1. and had the rules instead commenced with W. Va.C.S.R. § 77–6.3.1. (as does the similar Waiver provisions

of the Older Workers Benefit Protection Act § 201, 104 Stat. 983, 29 U.S.C. § 626(f) [1] considered in *Oubre v. Entergy Operations*, 522 U.S. 422, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (Breyer and O'Connor, J., concurring) (Rehnquist, C.J. and Scalia and Thomas, Jr., J., dissenting)), W. Va.C.S.R. § 77–6–3.1 by itself may [2] have compelled a different outcome in this case.[3]

■ We therefore hold that the legislative rules of the West Virginia Human Rights Commission, which became effective on April 29, 1992 and which set forth criteria for regulating the voluntary release or waiver of an individual's right to pursue a claim, are limited to the pursuit of a claim "before the West Virginia Human Rights Commission" and expressly do not apply to the pursuit of a claim brought under the West Virginia Human Rights Act, W. Va.Code 5–11–1, *et seq.*, in another forum. We find agreement for our conclusion in *Spradling v. Blackburn*, 919 F.Supp. 969, fn. 13. (S.D.W.Va.1996), in which Chief Judge Haden had an opportunity similar to that before us to review the "Scope" language of the 1992 regulations of the Commission, "before the West Virginia Human Rights Commission." In *Spradling*, the District Court concluded, as this Court does, that "[t]he [1992] regulations, by their own terms, do not have any effect on the validity of a waiver when a plaintiff opts to file suit in the first instance in a West Virginia circuit court. The Plaintiffs chose to do so here and never filed a charge of discrimination with the Human Rights Commission. Accordingly, the regulations are not binding on the Court."

### B. Tender Back

Appellant contends that the circuit court also erred in "[a]pplying the controversial and restrictive 'tender back' doctrine in the context of Appellants legal claims pursuant to the West Virginia Human Rights Act." "The tender back doctrine requires as a con-

---

1. See Appendix to Opinion of the Court in *Oubre v. Entergy Operations, Inc.*, 522 U.S. at 428, 118 S.Ct. 838.

2. We expressly do not reach the effect of the waiver at issue herein for proceedings in the civil courts of West Virginia had it been subject to the 2002 legislative rule revisions.

3. Appellant Koerner contends that *Oubre* is "precisely on point" and calls for resolution of the appeal in this case in her favor. *Oubre* is not "on point" because the waiver provisions of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f), do not limit their scope to claims *before* the Equal Employment Opportunity Commission.

dition precedent to suit, that the plaintiff return the consideration received in the exchange for a release, on the theory that it is inconsistent to bring suit against the defendant while at the same time retaining the consideration received in exchange for a promise not to bring a suit. See *Buffum v. Peter Barceloux Co.*, 289 U.S. 227, 234, 53 S.Ct. 539, 77 L.Ed. 1140 (1933) (citing state cases)." *Oubre*, 522 U.S. at 435, 118 S.Ct. 838, Thomas, J., dissenting.

The circuit court relied upon the "tender back" doctrine in concluding that "[s]ince the plaintiff did not tender back the money and other benefits provided to her under the Settlement Agreement, which, by its terms, released all claims the plaintiff may have arising out of her employment, she may not now assert additional claims for damages arising out of her discharge from employment." Appellant relies, in part, upon the United States Supreme Court decision in *Oubre*, for the proposition that the failure of a defendant to "tender back" does not ratify or make effective a release of claims that does not conform to the requisites of a release or waiver of claims as set forth in the Commission's Waiver rules. Since we agree with the circuit court that the 1992 Waiver rules of the Commission do not apply to the Appellant's instant civil action, and with the circuit Court's disposition of this case, resolution of this issue is not necessary. We therefore decline to consider the "tender back" doctrine at this time.

### C. Appellant's Refusal to Sign the Release

■ Appellant also claimed that there was "no knowing and voluntary waiver" by her of her right to pursue a claim under the West Virginia Human Rights Act in the Circuit Court of Kanawha County because she refused to sign the Release to which the Settlement Agreement made reference. Rule 3(c) of the Rules of Appellate Procedure in the Court requires a petition for appeal to set forth the "assignments of error relied upon on appeal ...." Appellant did not in her petition for appeal assign as error on the part of the circuit court for its failure to invalidate the Settlement Agreement on that ground. Therefore, notwithstanding the difficulties inherent in Appellant attempting to avoid the bargain she voluntarily made herein, we decline to consider the Appellant's argument with respect thereto. *Holmes v. Basham*, 130 W.Va. 743, 45 S.E.2d 252, 258 (1947) (the Court refused to consider an argument in an Appellant's brief that was not assigned as an error in the petition for appeal.); *Tiernan v. Charleston Area Medical Center, Inc.* 203 W.Va. 135, 506 S.E.2d 578, 583, n. 10 (1998) ("Issues not raised on appeal ... are deemed waived."); 18 Michie's Jurisprudence, *Appeal and Error* § 210, p. 400, n. 15.

■ Accordingly, this Court holds that where a claim arising prior to August 12, 2002, under the West Virginia Human Rights Act is pursued in a forum other than before the West Virginia Human Rights Commission, a valid waiver need not expressly refer to specific rights or claims arising under the West Virginia Human Rights Act. Appellant Koerner's waiver of her rights or claims arising prior to August 12, 2002 under the West Virginia Human Rights Act as memorialized during the course of the September 11, 1998 grievance hearing and in the subsequent document styled "Settlement and Agreement" was therefore valid where she opted to pursue her claim in a West Virginia circuit court rather than before the West Virginia Human Rights Commission and where the waiver was subjectively found to be knowing and voluntary.

### IV

### CONCLUSION

For the reasons stated above, this Court concludes that the circuit court did not err in enforcing the Settlement Agreement herein because the 1992 Waiver rules of the West Virginia Human Rights Commission, which are applicable to this appeal, applied only to West Virginia Human Rights Act claims brought before the Human Rights Commission and not to West Virginia Human Rights Act claims pursued in other forums. Accordingly, the March 10, 2003, order of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed