## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**LARRY V. STARCHER, Administrator CTA for the Estate of Arthur P. Scotchel; LOUIS A. SCOTCHEL, SR.; LOUIS A. SCOTCHEL, JR.; ARTHUR C. SCOTCHEL; and REBECCA SCOTCHEL,**
Plaintiffs Below, Petitioners,

**FILED**

**November 7, 2017**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 16-1160 (Monongalia County No. 15-C-242)**

**KEITH J. PAPPAS,**
**Defendant Below, Respondent.**

### MEMORANDUM DECISION

The petitioners herein and plaintiffs below, Larry V. Starcher,[1] Administrator CTA for the Estate of Arthur P. Scotchel; Louis A. Scotchel, Sr.; Louis A. Scotchel, Jr.; Arthur C. Scotchel; and Rebecca Scotchel ("Scotchel family beneficiaries"), by counsel Jacques R. Williams, appeal an order entered November 16, 2016, by the Circuit Court of Monongalia County. By that order, the circuit court dismissed an action against a previous administrator of the Estate of Arthur P. Scotchel, Keith J. Pappas ("Mr. Pappas"), respondent herein and defendant below, by counsel Carol P. Smith. On appeal to this Court, the Scotchel family beneficiaries contend that the circuit court erred in its application of Rule 201 of the West Virginia Rules of Evidence regarding judicial notice, misapplied Rule 12(b)(6) of the West Virginia Rules of Civil Procedure regarding dismissal, misapplied the doctrine of *res judicata*, and misapplied the statute of limitations.

Upon our thorough and considered review of the assignments of error, the parties' arguments, the appendix record, and the pertinent authorities, we find that the circuit court committed no error in the dismissal of the action against Mr. Pappas. Consequently, we affirm the circuit court's November 16, 2016, order. Because this case does not present a new or substantial question of law, and for the reasons set forth herein, we find the issuance of a memorandum decision is appropriate pursuant to Rule 21(c) of the West Virginia Rules of Appellate Procedure.

Arthur P. Scotchel, a Morgantown, West Virginia, businessman and the principal of Westover Realty, died on March 26, 2009. On April 8, 2009, Louis A. Scotchel, Sr., a nephew of the decedent, lodged the "Last Will and Testament of Arthur P. Scotchel," dated

---

[1]At the outset, we note that Mr. Starcher is a former Justice of this Court.

June 30, 2005 ("2005 Will"), with the Clerk of the County Commission for Monongalia County, West Virginia. Louis A. Scotchel, Sr., was named as the fiduciary in the 2005 Will.

Later in the afternoon of April 8, 2009, John C. Scotchel, Jr., also a nephew of the deceased, presented the "Last Will and Testament of Arthur P. Scotchel," dated January 9, 2006 ("2006 Will"). The 2006 Will named John C. Scotchel, Jr., as the fiduciary. Louis A. Scotchel, Sr., returned the Letters of Administration he had earlier been given, as requested by the Clerk of the County Commission for Monongalia County. Thereafter, John C. Scotchel, Jr., was appointed Executor of the Estate of Arthur P. Scotchel ("the estate"). George Armistead, Esq., was assigned as the Fiduciary Commissioner. The essential difference in the two Wills was in the naming of the fiduciary and the amount of distribution to the named fiduciary. As to all other beneficiaries in either Will, the distribution was equal.

Disputes over the handling of the estate and the management of Westover Realty began almost immediately. Complaints included concerns that real estate was not being maintained, bills and mortgage debt were not being paid, and banks were threatening foreclosure proceedings. The Scotchel family beneficiaries also disagreed with the manner in which John C. Scotchel, Jr., was handling the estate. Therefore, on July 17, 2009, they filed a complaint seeking injunctive relief in the form of removing John C. Scotchel, Jr., as Executor. Additionally, on July 22, 2009, the Scotchel family beneficiaries filed a petition with the Monongalia County Commission to remove John C. Scotchel, Jr., as Executor. The removal petition was referred to Fiduciary Commissioner Armistead. A few months later, in October 2009, the Scotchel family beneficiaries also filed a complaint contesting the 2006 Will on the grounds of lack of testamentary capacity and undue influence as allegedly committed by John C. Scotchel, Jr. The Scotchel family beneficiaries sought to invalidate the 2006 Will in favor of the 2005 Will.

Fiduciary Commissioner Armistead made unsuccessful attempts at resolving the various disagreements among the Scotchel family beneficiaries. The record reflects that he spent almost forty hours conducting hearings, conferences, and conference calls in an effort to investigate the records, certify the facts, and resolve the disputes to no avail. Ultimately, Mr. Pappas was approached by Fiduciary Commissioner Armistead; John C. Scotchel, Jr.; and then-counsel to the Scotchel family beneficiaries to serve as Administrator CTA of the estate. After meetings and discussions, the Scotchel family beneficiaries agreed to the appointment of Mr. Pappas as Administrator CTA of the Estate. The agreement was memorialized with the signing of a Memorandum of Agreement dated April 5, 2010. The Memorandum of Agreement was prepared by counsel for the Scotchel family beneficiaries. Among other things, the Memorandum of Agreement provided that Mr. Pappas would be compensated for his services at the hourly rate of $175.00 and that paralegal time would be compensated at a rate of $65.00 per hour. Fiduciary Commissioner Armistead informed the

Monongalia County Commission of the Memorandum of Agreement and recommended the appointment of Mr. Pappas. The Monongalia County Commission accepted the recommendation and appointed Mr. Pappas as Administrator CTA on April 21, 2010. Upon appointment, Mr. Pappas was substituted as a named party in the pending action for injunctive relief and the Will contest.

The efforts of Mr. Pappas to garner the assets of the estate, conduct a property review, and profile the estate individually, as well as the finances of Westover Realty, proved to be challenging. There was financial disorganization, including a lack of financials, and missing banking records for various shell corporations, an absence of account ledgers, and an inability to determine what property was owned and, if owned, what property was encumbered. Deeds and titles were not maintained, rentals were not accounted for, leases were missing and tax documents could not be located. Further, investigation determined that there were some $400,000.00 worth of creditor claims against the estate and another $450,000.00 of claims against Westover Realty properties.

Mr. Pappas filed the initial appraisal and accounting documents regarding the estate on September 8, 2011. Personal nonprobate real estate was valued at $85,900.00. The total value of the personal probate assets was $77,115.00. No objection to the first appraisal was made and it was confirmed by the Monongalia County Commission. However, the disputes among the Scotchel family beneficiaries continued. In November 2011, Mr. Pappas sought to withdraw as Administrator CTA, but the Scotchel family beneficiaries requested that he continue to serve. Fiduciary Commissioner Armistead expressed the view that he would not recommend relieving Mr. Pappas unless an attorney/accountant was found to replace him. Subsequent expressions of a desire to be relieved of his duties were met with similar expressions of reluctance by Fiduciary Commissioner Armistead.

Second and third annual accountings also were filed by Mr. Pappas with the Monongalia County Commission. These accountings also were approved without objection. The unobjected to accountings report the billings of and payments to Mr. Pappas. During the course of the estate proceedings, Mr. Pappas sent itemized monthly statements to all heirs and to Fiduciary Commissioner Armistead for services performed from 2010 through 2014.

By June 3, 2011, Mr. Pappas had billed $72,057.71 and was paid $50,000.00. On June 22, 2012, Mr. Pappas was paid an additional $12,500.00. These are the only payments made to Mr. Pappas for itemized services billed to the estate. Mr. Pappas' total itemized billing for work he performed for the estate amounted to $195,305.00.

3

By February 2012, complaints were being made by Scotchel family beneficiaries about the fees of Mr. Pappas.  On June 24, 2013, counsel for the Scotchel family heirs filed an ethics complaint asserting that Mr. Pappas' fees were excessive.

In March 2014, the Will contest action was tried before a jury which found that the 2006 Will was the product of undue influence exerted by John C. Scotchel, Jr., over the decedent, resulting in the invalidation of the 2006 Will.  The Scotchel family beneficiaries requested that Mr. Pappas be removed and Louis A. Scotchel, Sr., be appointed.  The circuit court denied the motion and instructed the parties that the appointment and removal of an administrator was a probate matter that needed to go before the Monongalia County Commission.

Louis A. Scotchel, Sr., requested the Monongalia County Commission to appoint him as executor under the 2005 Will.  Mr. Pappas objected to the appointment on the grounds that Louis A. Scotchel, Sr., had filed various claims against the estate that amounted to a conflict of interest.  Fiduciary Commissioner Armistead advised that Louis A. Scotchel, Sr., had a conflict of interest.  Likewise, Phillip M. Magro, Esq., counsel for the Monongalia County Commission, agreed that a conflict of interest meant that Louis A. Scotchel, Sr., should not be appointed as a fiduciary of the estate.  Mr. Starcher, who had testified as a family friend, also agreed that Louis A. Scotchel, Sr., had a conflict of interest.

Mr. Pappas' request to be released of his duties was approved by the Monongalia County Commission on April 16, 2014.  As requested, Mr. Pappas submitted a Fourth and Final Accounting on May 9, 2014.  After being prevailed upon, Mr. Starcher took an oath and became the Administrator CTA of the estate on April 21, 2014.  Mr. Starcher filed an objection to the Fourth and Final Accounting.  However, he requested that the issues not be referred to the Fiduciary Commissioner and that the Monongalia County Commission take no action on the objections.  No action has been taken.

Mr. Starcher also forwarded his objections to the Office of Disciplinary Counsel, which, based upon the objections and the previous complaint of June 24, 2013, opened an ethics complaint against Mr. Pappas.  A Statement of Charges was issued and a two-day hearing was held before a Hearing Panel Subcommittee ("HPS") in January, 2015.  Among other things, the HPS found that the Office of Disciplinary Counsel did not prove that Mr. Pappas had violated his duties to his clients, the public, the legal system, or the profession.  Rather, the HPS concluded that Mr. Pappas met his burden of proving that his fees were reasonable.  In light of its findings and conclusions, the HPS recommended no sanction be issued and that the charges be dismissed.  The Office of Disciplinary Counsel filed a consent to the recommendation.  Upon review and consideration, this Court entered an order on

4

August 20, 2016, concurring with the HPS recommendation and further directing that no sanction be imposed and that the statement of charges be dismissed.

Additionally, on April 9, 2015, a one-sentence complaint was filed against John C. Scotchel, Jr., and Mr. Pappas alleging that the Scotchel family beneficiaries "have sustained damages as a result of actions taken by John C. Scotchel, Jr. and Mr. Pappas in the administration of the Estate of Arthur P. Scotchel." The complaint was not served. Instead, an amended complaint was filed on August 7, 2015, alleging that, beginning in 2009 and continuing for some five years, John C. Scotchel, Jr., and Mr. Pappas breached their fiduciary duties, were otherwise negligent, and had acted improperly.

Count one of the amended complaint alleged waste by negotiating and selling income-producing assets below their fair market valuation; retaining and paying lawyers to defend the 2006 Will when they knew, or reasonably should have known, that it was invalid; and, as to Mr. Pappas, charging and collecting excessive fees. Count two alleged a breach of promise and failure to satisfy claims of Louis A. Scotchel, Sr., for reimbursement. These claims allegedly involve the advancing of funds by Louis A. Scotchel, Sr., to preserve the estate and satisfy a sizeable note on a piece of property so as to prevent foreclosure and the assurances of Mr. Pappas that Louis A. Scotchel, Sr., would have a first right of refusal on the property or that the lien would be paid off. Count three of the amended complaint generally asserted breach of fiduciary duty, misfeasance, nonfeasance, and malfeasance.

Mr. Pappas filed a motion to dismiss the amended complaint or, in the alternative, a motion for a more definite statement.[2] The motion was grounded in arguments that the claims were barred by the statute of limitations, barred by the doctrine of *res judicata*, and failed to state a claim upon which relief could be granted. No written response in opposition was filed. Upon hearing arguments, the circuit court directed the parties to meet and confer to determine whether there were viable claims. This meeting resulted in an impasse. An opportunity to amend the complaint was provided, but not acted upon.

Mr. Pappas filed a renewed motion to dismiss or, in the alternative, for summary judgment to which the Scotchel family beneficiaries filed a response, with exhibits, and a sur reply, with additional exhibits. Argument was heard, and the circuit court entered an order dated November 16, 2016, granting the motion and dismissing all claims against Mr. Pappas with prejudice. From this order, the Scotchel family beneficiaries appeal to this Court.

---

[2]We observe that the Scotchel family beneficiaries represent that their claims against John C. Scotchel, Jr., are not being pursued due to his pending bankruptcy proceeding.

At the outset, we note that while the circuit court order is characterized as granting a motion to dismiss, the motion was presented to the circuit court in the alternative as one for summary judgment. Significantly, both parties submitted voluminous amounts of material outside the pleadings of which the circuit court took judicial notice. Regardless of how the order is characterized, the appropriate standard of review is *de novo*. We have held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.,* 194 W. Va. 770, 461 S.E.2d 516 (1995). Likewise, "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994).

We first consider the argument that the circuit court erred in taking judicial notice of various pleadings and other documents filed in other circuit court actions, the Monongalia County Commission, and the lawyer disciplinary proceedings regarding Mr. Pappas. The Scotchel family beneficiaries primarily take issue with the weight placed on the pleadings and documents by the circuit court. In essence, they contend that the materials were viewed more favorably for Mr. Pappas, while other materials, favorable to them, were ignored. Particularly complained of is the judicial notice taken regarding documents from the Office of Disciplinary Counsel proceedings. On the other hand, Mr. Pappas contends that all parties were informed that the circuit court intended to take judicial notice of the various materials, and there was no objection.

Pursuant to Rule 201 of the West Virginia Rules of Evidence, a court may take judicial notice of adjudicative facts not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Moreover, Rule 201 further provides that a court may take such judicial notice on its own accord or upon request.

In this matter, the circuit court took judicial notice of 17 exhibits submitted by Mr. Pappas consisting of filings in the circuit court, the County Commission, and the complaint filed with the Office of Disciplinary Counsel against Mr. Pappas on June 21, 2013. The circuit court also took judicial notice of three exhibits containing documents filed in three pending civil actions involving the parties as submitted by the Scotchel family beneficiaries. Additionally, the circuit court took judicial notice of the lawyer disciplinary proceedings and subsequent order of this Court regarding Mr. Pappas.

Our considered review of the record mandates the conclusion that there was no error committed by the circuit court in its application of Rule 201 of the West Virginia Rules of Evidence. Specifically, judicial notice was not taken for the truth of the matters asserted in other litigation, but rather for the establishment of the facts of litigation and related filings.

6

Moreover, the Scotchel family beneficiaries did not object to the documents submitted by Mr. Pappas, including the lawyer disciplinary complaint, and also submitted voluminous exhibits of their own, to which no objection was made.

We next consider the related argument that the circuit court misapplied Rule 12(b)(6) of the West Virginia Rules of Civil Procedure particularly in granting dismissal of the amended complaint with prejudice. This argument is readily rejected as it is abundantly clear by the framing of the motion and by the submission by both parties of matters outside the pleadings that the motion was treated by the parties and the circuit court as one for summary judgment such that a dismissal, if appropriate, is a dismissal with prejudice. Moreover, Syllabus point 5 of *Sprouse v. Clay Communication, Inc.*, 158 W. Va. 427, 211 S.E.2d 674 (1975), stands for the proposition that dismissal of an action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a bar to the prosecution of a new action grounded in substantially the same set of facts, unless the circuit court specifically dismisses without prejudice.

This Court now turns to the claims of the Scotchel family beneficiaries that the circuit court misapplied the statute of limitations in finding that the claims were barred by the two-year statute of limitations. The primary contention is that the action was filed within two years of Mr. Pappas either invoicing or collecting legal fees, and, even if the claims accrued earlier, the principle of extending the statute of limitations due to continuous representation tolls the running of the statute of limitations.

It is well-recognized that an action for waste is governed by a two-year statute of limitations. *Keesecker v. Bird*, 200 W. Va. 667, 682-83, 490 S.E.2d 754, 769-70 (1997). Similarly, an action for breach of fiduciary duty is governed by a two-year statute of limitations. *Dunn v. Rockwell*, 225 W. Va. 43, 56, 689 S.E.2d 255, 268 (2009).

The claims for waste and breach of fiduciary duty are grounded in the complaint that Mr. Pappas over-billed, over-invoiced, and over-collected such that his fees were unreasonable and depleted the estate. There also are allegations regarding the sale of income producing properties for less than market value.

Without question, the causes of action in regard to these issues accrued well prior to the filing of the amended complaint. The record clearly reflects that the properties were all sold by the end of calendar year 2011. The most generous view of the facts of record reflects that an action grounded in complaints about the sales should have been brought no later than January 2014. Similarly, the payment of fees to Mr. Pappas occurred on June 3, 2011, and June 22, 2012. Those payments represent when the cause of action accrued. At the very

7

latest, the complaint should have been brought no later than June 22, 2014. The amended complaint was not filed until August 15, 2015.

This Court rejects the argument that the statute of limitations should be tolled by the extension of the continuous representation doctrine announced in Syllabus pt. 6 of *Smith v. Stacy*, 198 W. Va. 498, 482 S.E.2d 115 (1996), wherein we held that "[W]est Virginia adopts the continuous representation doctrine through which the statute of limitations in an attorney malpractice action is tolled until the professional relationship terminates with respect to the matter underlying the malpractice action." The argument here is that, inasmuch as Mr. Pappas is the duly-appointed Administrator of the estate, the cause of action should be tolled until such time as he is relieved of his appointment. However, we observe that the principles underlying the adoption of the continuous representation doctrine simply do not apply to this case. The doctrine is grounded in notions of protecting the integrity of the professional relationship while it is ongoing as well as protecting the client from the barring of his or her cause of action by delay while an allegedly negligent lawyer attempts to repair or recover from any error. Those concerns are not at issue here as there is no attorney-client relationship and the comprehensive statutory scheme governing the administration of estates provides various mechanisms for those with interests in the estate to raise issues and objections before the county commission. *See generally*, W. Va. Code § 44-1-1 *et seq.* (governing the administration of estates and trusts).[3]

Thus, this Court concludes that the circuit court committed no error in dismissing the amended complaint as it relates to all the causes of action grounded in the claims relating to the sales of real estate, and the fees billed and paid to Mr. Pappas for work in connection with administering the estate.[4]

_____

[3]We further reject the unsupported argument that there was no "standing" to bring a cause of action until such time as Mr. Starcher was appointed Administrator in April 2014. That appointment did not create new legal rights. This Court also rejects the bare bones argument that the monthly submission of invoices by Mr. Pappas, in some fashion, extended the statute of limitations. To the extent that there appears to be an argument that the probate statute and the West Virginia Rules of Professional Responsibility operate in some manner to save the claims from the running of the statute of limitations, we likewise reject the argument. We also observe that, in this matter, a Memorandum of Agreement was entered into which included an hourly rate agreement as "otherwise provided" for in the probate statutes. *See* W. Va. Code § 44-4-12 (2002) (2014 Repl. Vol.).

[4]Inasmuch as our analysis compels us to affirm the circuit court's finding that the statute of limitations bars the claims grounded in the fees and payments to Mr. Pappas and the sale of properties, it is unnecessary for this Court to address the challenges to the

8

Finally, due to some discussion in the briefs, we consider the retention of and partial payment of fees to the outside law firm hired by Mr. Pappas. Those claims were considered by the circuit court under a discrete heading styled "Failure to state a claim upon which relief can be granted." The circuit court relied on the statutory scheme governing the administration of estates indicating that Mr. Pappas was required to serve as Administrator until he was released by the Monongalia County Commission and that administrators are required to pay the administrative costs of an estate in an order beginning with costs and expenses of administration. *See* W. Va. Code § 44-7-3, § 44-3A-26 (1982) (2014 Repl. Vol.). Observing that failure to pay the legal fees could have subjected the estate to additional claims and litigation, the circuit court concluded that Mr. Pappas had the statutory authority and duty to pay the legal fees and found that the amended complaint failed to state a claim for relief.

Our review of the assignments of error and the related briefing demonstrates that the Scotchel family beneficiaries did not raise or otherwise challenge this finding by the circuit court. While the briefs rhetorically criticize the retention of counsel and the partial payment of fees, it is of no moment because there is no challenge made to the actual findings and conclusion of the circuit court with respect to the dismissal of the claims regarding retention and payment of outside law firms. *See, e.g.*, *Koerner v. West Virginia Dep't of Military Affairs & Pub. Safety*, 217 W. Va. 231, 237, 617 S.E.2d 778, 784 (2005), (assignments of error that are not argued in the brief on appeal may be deemed waived); *Tiernan v. Charleston Area Med. Ct., Inc.*, 203 W. Va. 135, 140 n.10, 506 S.E.2d 578, 583 (1998) (issues not raised on appeal or merely mentioned in passing are deemed waived); *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981) (same).[5]

For the foregoing reasons, the November 16, 2016, order of the Circuit Court of Monongalia County is hereby affirmed.

Affirmed.

---

alternative reasoning of the circuit court with respect to the application of the doctrine of *res judicata*.

[5]Likewise, we specifically note that no challenge was made regarding the dismissal of count two of the amended complaint alleging failure to satisfy claims of Louis A. Scotchel, Sr. Apart from the issues of Rule 12(b)(6) of the West Virginia Rules of Civil Procedure and judicial notice, the assignments of error and briefing relate to improper or excessive fees and improper retention of and payment to outside counsel. Thus, any issues as to count two of the amended complaint are deemed waived.

**ISSUED:**  November 7, 2017


**CONCURRED IN BY:**

Chief Justice Allen H, Loughry II
Justice Robin Jean Davis
Justice Elizabeth D. Walker

**DISSENTED IN BY:**

Justice Margaret L. Workman
Justice Menis E. Ketchum, II

Justice Ketchum, joined by Justice Workman, dissenting:


The Petitioners filed an amended complaint against Defendant Pappas in August 2015. According to the majority opinion, count three of the amended complaint "generally asserted breach of fiduciary duty, misfeasance, nonfeasance, and malfeasance" arising out of the manner in which Defendant Pappas administered the estate.


Defendant Pappas administered the estate from 2010 until April 16, 2014.  As the Petitioners state in their brief, "[t]he most essential point of this case remains that [Defendant Pappas] invoiced and distributed large fees to himself—and authorized and distributed large fees to an outside law firm—that were totally disproportionate to the needs of the Estate." These complained of invoices include the "Fourth and Final Accounting" Defendant Pappas filed with the county commission in May 2014.


This Court has observed that "[t]he ultimate purpose of statutes of limitations is to require the institution of a cause of action within a reasonable time." *Perdue v. Hess*, 199 W.Va. 299, 303, 484 S.E.2d 182, 186 (1997).  Similarly, this Court has held that "[s]tatutes of limitation are statutes of repose, the object of which is to compel the exercise of a right of action within a reasonable time." Syllabus Point 4, *Humble Oil & Ref. Co. v. Lane*, 152 W.Va. 578, 165 S.E.2d 379 (1969).

10

Defendant Pappas administered the estate until April 2014.  This action was filed within two years of that time.  Thus, I find it was error for the majority opinion to affirm the circuit court's ruling that this case was barred by the statute of limitations.  The Petitioners lawsuit against Defendant Pappas was clearly filed within "a reasonable time."  Therefore, I respectfully dissent.